IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : |
| | :    CASE NO: |
| LARONCE HOWELL, | :    7:22-cr-55-WLS-TQL-1 |
| | : |
|     Defendant. | : |
| _____ | : |

# ORDER

Before the Court is the Motion to Withdraw Guilty Plea Pursuant to F.R.Cr.P. 11(d) (Doc. 177) ("Motion to Withdraw"). Defendant Laronce Howell ("Defendant" or "L. Howell") asserts that he entered his guilty plea with the belief that the Government had produced all discovery in the case. However, Defendant alleges that afterwards, he became aware of evidence that significantly undercut the credibility of the two minor victims in this case, Minor Victim #1 ("MV1") and Minor Victim #2 ("MV2" and together with MV1, the "Victims"). Thus, Defendant now contends that his guilty plea was not knowing and intelligent in accordance with his constitutional rights.

For the following reasons, the Motion to Withdraw (Doc. 177) is **DENIED**.

## I.    PROCEDURAL HISTORY AND HEARINGS

Defendant was indicted on October 12, 2022 (Doc. 1). On March 14, 2023, a five-count Superseding Indictment (Doc. 53) ("Superseding Indictment") was filed against the Defendant L. Howell and co-defendant Dewayne Howell ("D. Howell").[1] L. Howell was charged in all five counts with the following offenses: Count One: Sex Trafficking of Children; Count Two: Coercion and Enticement of a Minor; Count Three: Production of Child Pornography; Count Four: Distribution of Child Pornography; and Count Five: Possession of

---

[1] The original Indictment (Doc. 1) contained seven counts. The first five count were substantially the same as those noted above, except that D. Howell was added to Count Two in the Superseding Indictment and Count Four was slightly reworded. Counts Six and Seven of the original Indictment were charges against D. Howell only, and those counts were dropped in the Superseding Indictment.

1

Child Pornography. L. Howell was arraigned on the Superseding Indictment on March 28, 2023.

On November 8, 2022, Timothy R. Saviello of Federal Defenders Middle District of Georgia, Inc., entered his appearance as counsel for L. Howell. (Docs. 32 & 39). Mr. Saviello requested discovery on November 8, 2022, and received discovery on or about November 30, 2022. (Docs. 40 & 177 at 2). That discovery included the Victims' written statements and summary reports of law enforcement interviews with the Victims. (Doc. 177 at 2). After discussions and with the assistance of his counsel, Defendant agreed to enter into a plea agreement. (*Id.* at 3). The Court scheduled a change of plea hearing ("CHOP Hearing") for October 5, 2023. (*See* Docket). Government's Counsel provided Mr. Saviello with the transcripts of the Victims' Grand Jury testimony on October 4, 2024—approximately twenty-four hours prior to Defendant's CHOP Hearing. (Doc. 177 at 3). Mr. Saviello did not review the Grand Jury testimony or discuss such testimony with Defendant prior to the CHOP Hearing. (*Id.*)

### A. Plea Agreement

On October 5, 2023, the Court held the CHOP Hearing at which Defendant pled guilty to Count Three of the Superseding Indictment—Production of Child Pornography, in violation of 18 U.S.C. § 2251(a) and 18 U.S.C. § 2251(e). (Docs. 113 & 114). In exchange, the Government dismissed the remaining counts in the Superseding Indictment as to L. Howell. (Doc. 113 ¶ (4)(A)).

As most relevant here, the Plea Agreement provides that Defendant acknowledged and understood that by pleading guilty to Count Three:

1. Defendant's possible statutory sentence includes: (a) a minimum of fifteen (15) and a maximum of thirty (30) years imprisonment; (b) a maximum fine of $250,000 that may be imposed in addition to the term of imprisonment; (c) a minimum term of supervised release of five (5) years up to the possibility of lifetime supervision, (d) a mandatory assessment of $100, (e) mandatory restitution of at least $3,000, per victim, (f) potential assessments under 18 U.S.C. § 3014 of $5,000 per count; and (g) an additional potential assessment under § 2259A ranging between $17,000 and $50,000. (Doc. 113 ¶ (3)(B)).

2

2. The Court is not bound by any estimate of the probable sentence range that Defendant may have discussed with anyone, including his attorney, the Government, or the United States Probation Office ("USPO"). (*Id.* ¶ (3)(C)).

3. Defendant cannot withdraw his guilty plea because he received an estimated guideline range from the Government, his attorney, or the USPO that is different than the guideline sentence actually computed by the USPO in the presentence investigation report and ultimately found by the Court to be the correct guideline range. (*Id.*)

4. An appropriate guideline sentence cannot be determined until after a presentence investigation report has been completed. (*Id.* ¶ (3)(D)).

5. Finally, the Plea Agreement contained the following Stipulation of Facts which the Defendant agreed the Government could prove beyond a reasonable doubt:

> On or about October 1, 2020, Defendant used his cellular telephone to film Minor Victim #1, who was 13 years old, engaged in sexually explicit conduct with two adult men. Defendant sent this video from his cellular telephone to his brother's cellular telephone as source file: Attachments/0/20201002_035908. Defendant admits that his cellular telephone used to produce the film was manufactured outside the United States, and had thus traveled in interstate and foreign commerce.

(*Id.* ¶ (8)).

### B. October 5, 2023 CHOP Hearing

Mr. Saviello represented Defendant at the CHOP Hearing. Defendant was placed under oath and after discussion with the Defendant, the Court found Defendant was competent to proceed with the CHOP Hearing. (CHOP Tr. 4:15–8:23, Doc. 188). Defendant testified that he received a copy of the Superseding Indictment and Mr. Saviello had explained the charges and Defendant's Constitutional rights to Defendant. (*Id.* 8–9). Defendant also confirmed that he had the opportunity to read and review the Plea Agreement, that he had fully discussed the agreement with Mr. Saviello, and that Defendant understood the terms of the Plea Agreement. (*Id.* 9–10). Pursuant to its usual practice, the Court carefully and thoroughly reviewed the Plea Agreement with Defendant, ensured that Defendant fully understood the potential statutory punishment he could receive by pleading guilty to Count Three, that no one could tell Defendant what his potential sentence was under the sentencing

3

guidelines until after the USPO conducted its investigation and prepared its Presentence Investigation Report, and that the Court is not bound by any recommendations contained in the Plea Agreement or otherwise. (*Id.* 10–11).

As particularly relevant here, the Court discussed in detail the elements the Government would have to prove for a jury to find Defendant guilty beyond a reasonable doubt of the Production of Child Pornography offense. (*Id.* 14–23). The Court further explained the meaning of terms used in its discussion of the elements and asked Defendant multiple times throughout the colloquy whether he understood the Court's explanation. Defendant stated each time that he understood. (*Id.* 18:4, 19:2, 19:20, 20:5, 21:11, 21:23, 22:9, 23:2, 23:11). At the conclusion of this discussion, Defendant stated he did not have any questions about the meaning of the offense, the Court's explanation of the Government's burden, or any questions relating to his change of plea. (*Id.* 23:12–23).

Finally, the Court advised Defendant that if he changed his plea to guilty to Count Three, he could not remain silent, but would be required to admit under oath what he did that made him guilty of the offense of Production of Child Pornography. (*Id.* 30:6–12). To satisfy Defendant's admission requirement, Government's Counsel read into the record the Stipulation of Facts contained in the signed Plea Agreement as quoted above. (*See supra* p. 3). Mr. Saviello and Defendant agreed that the Stipulation of Facts as read into the record provided an accurate statement of Defendant's actions and the evidence the Government could prove at trial. (*Id.* 39:5–40:6). The Court asked the Government to describe the nature of the sexually explicit conduct in which the 13-year-old minor victim (MV1) was engaging with two men that was depicted in the film Defendant admitted to recording on his cell phone. (*Id.* 40:7–25). Government's Counsel advised that the film showed MV1 engaging in both sexual intercourse and oral sex with the men at the same time. Mr. Saviello confirmed the Government's description was correct. (*Id.*) The Court found that such conduct is clearly within the statute's definition of "sexually explicitly conduct," and that the Stipulation of Facts read into the record by Government's Counsel, as clarified by the Court's inquiry, and agreed to by Mr. Saviello and Defendant himself provided a sufficient factual basis for the Defendant to plead guilty to Count Three if he wished to do so. (*Id.* 40:21–25).

When asked what plea he wished to enter, L. Howell advised that he wished to plead guilty to Count Three. (*Id.* 41:9–14). After confirming with L. Howell that his guilty plea as to Count Three was freely, voluntarily, and knowingly given and that L. Howell was not relying on any promises or assurances made by anyone that were not specifically included in the terms of the Plea Agreement or stated to the Court during the Plea colloquy, the Court accepted L. Howell's change of plea to guilty as to Count Three. (*Id.* 40:25–42:12). L. Howell's sentencing hearing was originally scheduled for January 25, 2024, but was continued to May 29, 2024.[2]

### C. Motion and Hearing to Withdraw Guilty Plea

On May 23, 2024, Defendant, filed the pending Motion to Withdraw, and on May 28, 2024, the Government filed its response in opposition thereto. (Doc. 179). The May 29, 2024 sentencing hearing was continued, and a hearing on the Motion to Withdraw ("Withdrawal Hearing") was held in its place. (Docs. 178, 180).

Defendant alleges that certain statements of the Victims contained in the Valdosta Police Report ("Victims' Police Statements")[3] are inconsistent with the Victims' Grand Jury Testimony.[4] These alleged inconsistencies form the basis for Defendant's Motion to Withdraw. Defendant concedes that there are internal inconsistencies within the Victims' Police Statements and that he was aware of those inconsistencies prior to the CHOP Hearing. Defendant did not identify the inconsistencies of which he was already aware, but testified that those inconsistencies alone did not dissuade him from entering into the Plea Agreement. (Withdrawal Hrg. Tr. 19:17–20:5, Doc. 189). Defendant asserts that had he been aware of the alleged additional inconsistencies in the Victims' Grand Jury Testimony, he would not have

---

[2] Defendant's sentencing hearing was continued at the request of the USPO. The continuance was requested because during the presentence investigation, the probation officer encountered voluminous evidence and significant criminal history to review, the bulk of which was aged and originated from another district. In addition, victim impact information and restitution requests had been delayed because MV1 was detained in the state juvenile courts. (Doc. 124). The sentencing hearing was rescheduled for May 29, 2024. (Docket Entry April 17, 2024).

[3] The Victims' Police Statements is a compilation of several interviews of MV1 and/or MV2 by officers and investigators. The report also includes forensic interviews with MV1 that were conducted at the Child Advocacy Center and Greenleaf Behavioral Health Hospital. The Valdosta Police Report was introduced into evidence, without objection, as Government's Exhibit 1 during the Withdrawal Hearing.

[4] The transcripts of the Grand Jury Testimony of Minor Victim #1 and the Grand Jury Testimony of Minor Victim #2 (collectively the Victims' Grand Jury Testimony) were entered into evidence, without objection, as Defendant's Exhibits 1 and 2, respectively, during the Withdrawal Hearing.

5

entered into the Plea Agreement because those "additional" inconsistencies provided "the straw that broke the camel's back in terms of ability to attack the credibility of the [Victims.]" (Withdrawal Hrg. Tr. 9:15–16).

In addition, Defendant contends that the inconsistencies between the Victims' Police Statements and the Victims' Grand Jury Testimony are so substantial that they amount to exculpatory material under *Brady v. Maryland*, 373 U.S. 220 (1963). According to Defendant, the Government's failure to provide the Victims' Grand Jury Testimony earlier in the process provides the necessary fair and just reason for the Court to permit Defendant to withdraw his guilty plea.

Defendant's Motion to Withdraw did not include any examples of the alleged inconsistencies between the Victims' Police Statements and their Grand Jury Testimony, but Defendant chose to testify at the Withdrawal Hearing in support of his motion.[5] Other than alleged inconsistencies as to the Victims' testimony concerning whether prices were shown on pictures of girls that were on Defendant's mobile phone and testimony concerning how MV1 spent money she received, Defendant's testimony provided virtually no enlightenment as to the alleged inconsistencies on which he based his Motion to Withdraw. (*See* Withdrawal Hrg. Tr. 21:16–22:10[6]).

---

[5] At the beginning of the Withdrawal Hearing, the Court advised Defendant that he could testify at the hearing, but he was not required to do so. The Court further cautioned Defendant as to the risks of testifying at the hearing, but that it was his decision, in consultation with his counsel, as to whether he wanted to testify. Upon deciding to testify, the Defendant confirmed that he understood the risks and that it was Defendant's decision to testify at the hearing. (*See generally* Withdrawal Hrg. Tr. 3–4, 15).

[6] When Mr. Saviello asked Defendant on direct why Defendant's position changed after he reviewed the Victims' Grand Jury Testimony, Defendant testified:

> A. The stories – none of the stories were adding up.
> . . .
> A. The grand jury and the discovery package that I received, everything changed, from the story – from the police cameras and everything.

(Withdrawal Hrg. Tr. 17:17–23).

> Q. So, Mr. Howell, tell us why your decision to plead guilty would have been different had you known about the grand jury transcripts?
> A. Hmm, the story was not adding up from my arrest and the recordings from the body cam of the officers, the videos that the – I received from my . . . defense team and all the paperwork, all the stories was three different stories. Three – it wasn't consistent with what it's supposed

In a colloquy with the Court, Defendant stated that during the CHOP Hearing he understood the charge to which he pled guilty. However, "later the next day [day after the CHOP Hearing] or the following day when I got the new – when I got the grand jury testimony, I just – I couldn't go with pleading out to something that I felt I didn't do." (Withdrawal Hrg. Tr. 27:4–10). At Mr. Saviello's request, a post-hearing briefing schedule was set to permit Defendant to provide a chart of the alleged new significant and substantial discrepancies.

The Defendant's post-hearing brief (Doc. 186) includes the following chart of alleged discrepancies in the Victims' Police Statements as compared to their Grand Jury Testimony. The chart includes what Defendant describes as (1) the "new" discrepancies that did not appear in previously provided discovery materials, and (2) only those new discrepancies that would be material to Defendant's ability to challenge the credibility of the Victims' testimony during a trial.

---

to have been, and then on the day of the grand jury, when I did get the grand jury testimony, it completely changed from everything that . . . supposedly got me arrested on my charges.

Q. And to you was that significant enough that had you known that you would have made a different decision about –

A. I would have never pleaded –

Q. – about pleading guilty?

A. – I would have continued on and went to trial.

(*Id.* 18:10–19:2). On cross-examination, Defendant testified:

Q. . . . Now, when you got this grand jury testimony, you stated that it was completely different. In what ways?

A. Like I said before, the stories, from the interviews that was given from – from different detectives, officers, and, hmm, everything they stated in all of their interviews.

Q. Is it your testimony that it was a completely different story from any of the other prior statements?

A. It is my – it is my testimony that once I – once I began to educate myself and look into my case and, hmm, learn of it, it was my testimony to say that they're lying and I want to face my accusers.

(*Id.* 20:8–20).

7

| Item No.[7] | Victims' Police Statements (Doc. 182) | MV1 - Grand Jury Testimony (Doc. 183, Ex. 1) | MV2 - Grand Jury Testimony (Doc. 183, Ex. 2) |
|---|---|---|---|
| 1 | MV2 states she had noticed changes in MV1's behavior after MV1 began hanging out with an older man named "Spyder" (p.2) | | No mention of seeing behavior changes in MV1 |
| 2 | MV2 stated that MV1 came home on 10/2/2020 with $1000.00 in money which MV1 said she earned "working for" LH (p.2) | | No mention of MV1 coming home on 10/2/2020 with any money at all |
| 3 | MV2 stated MV1 told her the money was given to her for helping LH's nephew weigh and bag marijuana (p.2) or "for dancing" (p.3) | | No mention of MV1 bringing home $1,000 |
| 4 | MV1 stated that she received $1,000 for "dancing" and spent it on cigars and weed (p.7) | Testified that LH gave her money but at the end of the night she had to give ½ back to LH and then gave the rest to her mother to pay bills (pp.7-8) | |
| 5 | MV2 stated that on 10/2/2020 when she, MV1 and LH arrived at the Super 8 Motel they all went into a room, where LH showed her photos of girls and discussed prices (p.2) | | Specifically testified that when she arrived at the Super 8 Motel on 10/2/2020 she and LH stayed in his car while her sister went into the hotel, and it was there in the car where LH showed her photos and discussed prices (p.5) |

---

[7] The Court added the "Item No." column for ease in referring to the alleged discrepancies.

8

| Item No.[7] | Victims' Police Statements (Doc. 182) | MV1 - Grand Jury Testimony (Doc. 183, Ex. 1) | MV2 - Grand Jury Testimony (Doc. 183, Ex. 2) |
|---|---|---|---|
| 6 | MV2 stated that when in hotel room at Super 8 Motel on 10/2/2020 with LH, he was actively texting with his clients, sending photos and negotiating acts of prostitution "in her presence" (p.2) | | No mention of LH actively negotiating deals when in hotel room on 10/2/2020 |
| 7 | MV2 stated multiple times that LH had prices next to the photos of the girls on his phone (p.2, 3) | | Testified that "he didn't have prices for them" (p.6) |
| 8 | MV1 states that she used drugs with LH each time she met him, including injecting drugs into her arm once (p.7) | Discussed drug use but not injecting drugs into her arm (p.12) | |
| 9 | MV1 states that LH wanted her to "meet up" with a man named Will, aka "Turtle" who MV1 knew as a friend of her father's. [No citation was provided by Defendant for this statement] | No mention of "Will" or "Turtle" | |
| 10 | MV1 stated that on the night of 10/2/20 she expected to make $2,000 (p.8) | No mention of specific $$ expectations on night of 10/2/20 | |
| 11 | MV1 stated that prior to 10/2/20 she had had sex with a man with a "grill" in his mouth at LH's behest and was paid $2,000. (pp.13, 14) or $1,000 (p.14) | Specifically testified she did not have sex with man with "grill" in his mouth but did have sex with another man with a salt & pepper beard. (pp.6-7) No testimony that she was paid anything for these acts. | |

| Item No.[7] | Victims' Police Statements (Doc. 182) | MV1 - Grand Jury Testimony (Doc. 183, Ex. 1) | MV2 - Grand Jury Testimony (Doc. 183, Ex. 2) |
|---|---|---|---|
| 12 | MV1 stated that on the night prior to 10/2/20 LH was paid "about $10" by each of the men she had sex with (p.15) | Testified that LH gave her money but at the end of the night she had to give ½ back to LH and then gave the rest to her mother to pay bills (pp.7-8) | |

## II.   LAW

"A defendant may withdraw a plea of guilty . . . (2) after the court accepts the plea, but before it imposes sentence if: . . . the defendant can show a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d)(2)(B). Generally, there is a "strong presumption that statements made during a plea colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). It is important to note, that a defendant has no absolute right to withdraw a guilty plea and bears a "heavy burden to show his statements under oath were false." *United States v. McCarty*, 99 F.3d 383, 385 (11th Cir. 1996); *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). "A defendant challenging a guilty plea based on a lack of information must show that the correct information would have made a difference in his decision to plead guilty." *United States v. McCoy*, 636 F. App'x 996, 998 (11th Cir. 2016) (citing *United States v. Schubert*, 728 F.2d 1364, 1365 (11th Cir. 1984)).

"In determining whether a defendant has met this burden, a district court 'may consider the totality of the circumstances surrounding the plea,' including '(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea.'" *United States v. Perez-Hernandez*, 490 F. App'x 275, 277 (11th Cir. 2012) (quoting *United States v. Buckles*, 843 F.2d 469, 471-72 (11th Cir. 1988)).

> The good faith, credibility and weight of a defendant's assertions in support of a motion to withdraw a guilty plea are issues for the trial court to decide. Additionally, the longer the delay between the entry of the plea and the motion to withdraw it, the more substantial the reasons must be as to why the defendant seeks withdrawal.

10

*United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006) (alterations adopted) (citations and internal quotation marks omitted). A plea is made knowingly and voluntarily if it is entered without coercion and with an understanding of the nature of the charges and consequences of the plea. *United States v. Fuenmayor-Arevalo*, 490 F. App'x 217, 227 (11th Cir. 2012).

## III.  DISCUSSION

### A. The Government was not required to provide the Victims' Grand Jury Testimony prior to Defendant entering into the Plea Agreement.

The Defendant contends that the Government was obligated to produce the transcripts of the Victims' Grand Jury Testimony as *Brady* material immediately upon the Grand Jury handing down the original Indictment. According to Defendant:

> The differences between the grand jury testimony and those prior statements [Victims' Police Statements] were obvious at the time the grand jury testimony was given, needing only a comparison to the prior statements already in possession of the government at the time of the grand jury proceedings. At that moment, the government's *Brady* obligations manifested, and the grand jury testimony should have been turned over to the defense.

(Doc. 177 at 6).

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. To state a *Brady* violation, "the defendant must prove that: (1) the government possessed evidence favorable to him; (2) the defendant did not possess the evidence and could not have obtained it with reasonable diligence; (3) the government suppressed the favorable evidence; and (4) the evidence was material." *LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1268 (11th Cir. 2005). "Impeachment evidence, . . . , as well as exculpatory evidence, falls within the *Brady* rule. Such evidence is 'evidence favorable to an accused,' so that, if disclosed and used effectively, it may make the difference between conviction and acquittal." *United States v. Bagley*, 473 U.S. 667, 676 (1985) (citations omitted).

In *United States v. Ruiz* the Supreme Court noted that "impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary* ('knowing,'

11

'intelligent,' and 'sufficient[ly] aware')." 536 U.S. 622, 629 (2002) (emphasis and alteration in original). In *Ruiz*, the Supreme Court held that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *Id.* at 633. Defendant did not address *Ruiz* in his briefs.

However, in interpreting *Ruiz*, the Eleventh Circuit has consistently found that the government is not required to provide defense counsel with impeachment evidence prior to defendant entering into a guilty plea. *See Mollica v. United States*, No. 19-11771-B, 2020 WL 2319883, at *2 (11th Cir. Jan. 7, 2020) (government was not otherwise required to disclose exculpatory impeachment evidence prior to entering a plea agreement, thus defendant's claim of ineffective assistance of counsel based on defense counsel's failure to raise *Brady* claim for government withholding allegedly exculpatory statement is without merit). "'[T]he Constitution does not require the prosecutor to share all useful information with the defendant.' The Constitution requires only that a guilty plea be knowing and voluntary; not that it be fully informed." *United States v. Johnson*, 603 F. App'x 867, 872 (11th Cir. 2015) (per curiam) (quoting *Ruiz*, 536 U.S. at 629); *see also Davidson v. United States*, 138 F. App'x 238, 239 (11th Cir. 2005) (per curiam) (citing *Ruiz* in finding that defendant's constitutional rights are not violated by government's failure to disclose, prior to entering into guilty plea, information that would impeach affidavit supporting search warrant).

Defendant's argument that he has presented fair and just reason to withdraw his guilty plea because the Government failed to meet its obligations under *Brady* is unpersuasive. Under the Supreme Court's decision in *Ruiz*, because the Defendant chose to enter into the Plea Agreement rather than proceed to trial, the Government was not required to produce the Victims' Grand Jury Testimony any earlier than such evidence was produced.[8]

---

[8] Under Federal Rule of Criminal Procedure 26.2, after either Victim testified on direct examination, the Court, on motion of the Defendant, would have been required to order Government's Counsel to produce any statements of such Victim that were in the Government's possession that related to the subject matter of that Victim's testimony. FED. R. CRIM. P. 26.2(a). A witness's "statement" includes the grand jury testimony of such witness. FED. R. CRIM. P. 26.2(f)(3). As noted by the Defendant,

> It is common practice in this district for the government to produce prior statements of witnesses the government knows they would call to testify some time prior to the actual testimony, even though Rule 26.2 requires production after the witness has testified. In that spirit, the government produced the grand jury testimony of the two named victims in this case the afternoon before Mr. Howell's plea even though those named victims were not being

12

The Defendant admitted that he was aware of discrepancies in the Victims' testimony prior to entering into the Plea Agreement. Therefore, he was aware of the potential challenge to the Victims' credibility and chose not to further develop or use that trial tactic. During the CHOP Hearing, this Court thoroughly reviewed the Defendant's Plea Agreement, the ramifications of his change of plea, and the potential statutory sentence that could be imposed on Defendant. The Court advised Defendant that his guideline ranges could be different than estimates given to him by Mr. Saviello, the Government's counsel, or the USPO, and that the actual guideline ranges would not be known until after the USPO's investigation. The Court thoroughly reviewed the elements of the Production of Child Pornography offense. Defendant was given the opportunity to ask questions and stated multiple times that he understood the Court's explanation and he had no questions. Defendant stipulated to the facts the Government could prove beyond a reasonable doubt to satisfy each element, and Defendant admitted that he was in fact guilty of the offense of Production of Child Pornography. *Medlock*, 12 F.3d at 187 (there is a "strong presumption that statements made during a plea colloquy are true"). Defendant testified that he had not been forced, coerced, or threatened into changing his plea to guilty as to Count Three, that his guilty plea was given freely, voluntarily, and of his own free will, and that he offered his plea of guilty to Count Three because he believed he was in fact guilty of Count Three. (Tr. CHOP Hrg. 41:9–42:12).

The Court finds that Defendant's decision to plead guilty was informed, albeit perhaps not as fully as Defendant contends he could have been, and that Defendant's decision to change his plea to guilty as to Count Three was knowingly and voluntarily made. *See Ruiz*, 536 U.S. at 629; *Johnson,* 603 F. App'x at 872.

### B. *Schubert* is distinguishable and Defendant's assertions are not credible and lack good faith.

Defendant relies heavily on the Eleventh Circuit's decision in *Schubert*, asserting that "[a]s in *Schubert*, 'correct information would have made a difference in [L. Howell's] decision

---

called to testify at any imminent hearing, but who would have had the right to be heard at any sentencing hearing[.]

(Doc. 177 at 4–5). By his own statements, Defendant concedes that by providing the Victims' Grand Jury Testimony twenty-four hours prior to the CHOP hearing, the Government complied with local custom and exceeded the requirements of Criminal Rule 26.2(a).

13

to plead guilty.'" (Doc. 177 at 9 quoting *Schubert*, 728 F.2d at 1365)). *Schubert* is clearly distinguishable on its facts and Defendant's reliance thereon is misplaced. In *Schubert*, after the government's witness signed a false sworn statement that he was not a government informant, thereby foreclosing defendant's entrapment defense, defendant entered into a guilty plea on a charge of possession of cocaine with intent to distribute. Prior to sentencing, the defendant's counsel discovered the lie and defendant moved to withdraw his guilty plea. The district court, however, denied defendant's motion because the evidence in support of the motion failed to make out an arguable case of entrapment.

> The Eleventh Circuit reversed the district court's decision stating:
>
> Once the district court concluded that [the informant] had lied, that his lie had influenced Schubert's decision to plead guilty, and that Schubert sought to argue entrapment at his trial, the court should have granted Schubert's motion to withdraw his guilty plea. It was improper for the district court to decide the merits of the proffered defense.

*Schubert*, 728 F.2d at 1366. The Eleventh Circuit found that the correct information would have made a difference in Schubert's decision to plead guilty because his decision was based solely on the informant's sworn statement. If provided the correct information, Schubert would have gone to trial with his entrapment defense, but the informant's lie eliminated that defense. *Id.*

Defendant equates the unquestionable lies in *Schubert* to his alleged additional discrepancies in the Victims' Grand Jury Testimony that *might* undermine the Victim's credibility *if* the Victims' were called as witnesses at a trial. *United States v. Agurs*, 427 U.S. 97, 109-110 (1976) ("mere possibility that an item of undisclosed information might have helped the defense, . . . does not establish 'materiality' in the constitutional sense"). At the time he entered into the Plea Agreement, Defendant already had the "correct information." He simple chose not to use it. More significant, unlike this case, the "correct information" in *Schubert* went directly to one of the elements necessary for Schubert to prove his defense of entrapment. None of the Victims' alleged inconsistent statements are conclusive to Defendant's guilt or punishment—nor are they exculpatory—because they do not exclusively control the determination of any of the elements necessary to prove the charge of Production of Child Pornography against Defendant. The subject information as noted, is clearly

14

impeachment evidence. Significantly, as the Government argues, the Government would not need to present the Victims' testimony to meet its burden of proof as to the Production of Child Pornography charge to which the Defendant pled guilty. The evidence required for such charge consisted of the pictures on Defendant's phone that he transferred to others.[9]

Finally, the Court considers the good faith, credibility and weight of the Defendant's assertions in support of his Motion to Withdraw. *Brehm*, 442 F.3d at 1298. "Additionally, the longer the delay between the entry of the plea and the motion to withdraw it, the more substantial the reasons must be as to why the defendant seeks withdrawal." *Brehm*, 442 F.3d at 1298. The Government contends that the true reason Defendant filed his Motion to Withdraw is that he did not like the sentencing range established in the draft Presentence Investigation Report (Doc. 157) ("PSR"). At the Withdrawal Hearing, Defendant testified on cross:

> Q. Mr. Howell, you have recently expressed your desire to withdraw your guilty plea; is that correct?
>
> A. Yes, ma'am.
>
> Q. And that was after you saw the presentence report that was prepared in your case?
>
> A. No, ma'am. My presentence report – my PSR just came two weeks ago, and I took this plea October 5th. So I'm just now getting – I asked this – October I asked to withdraw my plea.
>
> Q. Back in October you asked to withdraw your plea?
>
> A. After I got the testimony, the grand jury testimony.

(Withdrawal Hrg. Tr. 30:18–31:4). Defendant pled guilty on October 5, 2023. Defendant received the Victims' Grand Jury Testimony transcripts by October 7, 2023,[10] and testified that when he got the grand jury testimony, "I just – I couldn't go with pleading out to something that I felt I didn't do."[11] (*Id.* 27:8–10). The PSR was filed April 24, 2024. Defendant

---

[9] With respect to Defendant's position that this argument is irrelevant because his guilty plea was the result of a protracted negotiation to resolve the entire case and that materiality of the inconsistent Grand Jury Testimony is relevant as to Counts One, Two, Four and Five, Defendant failed to provide support for this argument or to explain how the alleged inconsistencies are material to his guilt or punishment of the charges in these four counts other than for impeachment purposes. (*See* Defendant's post-hearing reply brief (Doc. 195)).

[10] (*See* Withdrawal Hrg. Tr. 27:4–10 (Defendant testified that he got the grand jury transcripts the "next day [after the CHOP Hearing] or the following day[.]")).

[11] For the sake of clarity, Defendant's Motion to Withdraw does not seek to withdraw his guilty plea on the basis that he is not guilty of Count Three. Generally, there is a "strong presumption that statements made

15

filed an objection to the PSR on May 9, 2024, and his Motion to Withdraw was filed on May 23, 2024—seven and a half months after Defendant entered his guilty plea and a like period after receiving the Victims' Grand Jury Testimony. Defendant offered no explanation as to why he waited seven and a half months to file his Motion to Withdraw when he knew two days after entering into the Plea Agreement that he could no longer "go with" the Plea Agreement. (Withdrawal Hrg. Tr. 27:9).

By pleading guilty to Count Three, Defendant's maximum statutory sentence is thirty years. The Plea Agreement permits Defendant to avoid a potential life sentence that could have been imposed if he had been found guilty of Count One—Sex Trafficking of Children in violation of 18 U.S.C. § 1591(a)(1). *See* 18 U.S.C. § 1591(b)(1) (providing for sentence of fifteen years to life for violation of § 1591(a)(1) involving a victim who has not attained the age of fourteen years[12]). The PSR shows that the guideline imprisonment range for Defendant is 360 months to life. However, because the statutory maximum is thirty years, the guideline term of imprisonment is 360 months. (PSR ¶ 111). Essentially, once he received the PSR, Defendant became aware that, absent favorable resolution of his objections or the Court granting a downward departure or variance, Defendant's term of imprisonment under the statute and guidelines is 360 months. Defendant is forty-five years old.

At the Withdrawal Hearing, Defendant indicated that at the time he pled guilty, he knew the four other charges against him were going to be dropped, he was tired of fighting, did not believe he had anything to fight for, and he had nothing to go home to. (Withdrawal Hrg. Tr. *see generally* 28–30). In his colloquy with the Court, Defendant stated that after he talked to his children, "I felt I had something to fight – had something worth fighting for. So, based upon that decision, like I said, . . . it was all type of inconsistencies in these stories that I knew, but now I just said, okay, I'm not just going to lay down, I'm going to face my accusers." (*Id.* 29:18–25) "*I'm not fixing to take a life sentence.*" (*Id.* 23:13–14 (emphasis added)).

The timing of the filing of his Motion to Withdraw in relation to the PSR and his statements at the Withdrawal Hearing noted above call into question Defendant's good faith

---

during a plea colloquy are true." *Medlock*, 12 F.3d at 187; *see also McCarty*, 99 F.3d at 385 (in seeking to withdraw a guilty plea, defendant bears a "heavy burden to show his statements under oath were false").

[12] MV1 was 13 years old at the time of the offense.

16

and credibility as to the true reason for his Motion to Withdraw. By pleading guilty to Count Three, Defendant is not in fact facing a true life sentence. The only reason for him to characterize his sentence as a "life sentence" is that he is dissatisfied that his guideline range of imprisonment is 360 months—meaning he would most likely be close to seventy-five years old when released from prison if sentenced to 360 months. Defendant was warned that his potential guideline would not be known until after the USPO conducted its investigation. The totality of the circumstances strongly support the inference that Defendant's decision to fight the charges against him resulted from his review and dissatisfaction with the results of the PSR. That reason is not a fair and just reason to allow Defendant to withdraw his guilty plea which he entered knowingly, intelligently, and voluntarily.

## IV.   CONCLUSION

After a full consideration of the briefs, the evidence presented at the CHOP Hearing and Withdrawal Hearing, and the arguments of counsel, the Court finds Defendant received very close assistance of counsel throughout this case and in particular with respect to his decision to enter into the Plea Agreement. His decision to change his plea was made voluntarily, knowingly, and intelligently. After L. Howell pled guilty, his co-defendant D. Howell proceeded to trial. Due to the seven-month delay in L. Howell filing his motion to withdraw his guilty plea, the Government was prevented from trying L. Howell and D. Howell together. The Government would be put to the burden to prove all charges and witnesses who have already testified in one trial related to these same events could be further traumatized. The Government would, therefore, be prejudiced by the grant of L. Howell's Motion to Withdraw, and Judicial resources will have been wasted if a second trial, requiring the Victims to testify a second time and covering some of the same testimony elicited during D. Howell's trial, is required. Further, Defendant did not show that the Government failed to timely provide him with material information required under *Brady* or Federal Rule of Criminal Procedure 26.2. Thus, Defendant failed to meet his burden to establish a fair and just reason for the Court to allow him to withdraw his guilty plea.

Accordingly, Defendant's Motion to Withdraw Guilty Plea (Doc. 177) is **DENIED**.

The sentencing hearing in this case will be rescheduled by the Court by separate order or notice.

**SO ORDERED**, this 7th day of January 2025.

                                               /s/W. Louis Sands
                                               **W. LOUIS SANDS, SR. JUDGE**
                                               **UNITED STATES DISTRICT COURT**